**IN THE UNITED STATES DISTRICT COURT**

**FOR THE DISTRICT OF OREGON**

KIM S.,[1]                                        **1:20-cv-01823-BR**

       **Plaintiff,**                          **OPINION AND ORDER**

**v.**

**COMMISSIONER, SOCIAL
SECURITY ADMINISTRATION,**

       **Defendant.**

**BETSY R. SHEPHERD**
425 Riverwalk Manor Drive
Dallas, GA 30132
(505) 480-5630

       Attorney for Plaintiff

**NATALIE K. WIGHT**
United States Attorney
**RENATA GOWIE**
Assistant United States Attorney
1000 S.W. Third Avenue, Suite 600
Portland, OR  97204-2902
(503) 727-1021

---

[1] In the interest of privacy this Court uses only the first
name and the initial of the last name of the nongovernmental
party in this case.

1 - OPINION AND ORDER

**WILLY LEE**
Acting Regional Chief Counsel
**JEFFREY E. STAPLES**
Special Assistant United States Attorney
Social Security Administration
701 Fifth Avenue, Suite 2900, M/S 221A
Seattle, WA 98104
(206) 615-3706

      Attorneys for Defendant


**BROWN, Senior Judge.**

      Plaintiff Kim S. seeks judicial review of a final decision of the Commissioner of the Social Security Administration (SSA) in which he denied Plaintiff's application for Disability Insurance Benefits (DIB) under Title II of the Social Security Act.  This Court has jurisdiction to review the Commissioner's final decision pursuant to 42 U.S.C. § 405(g).

      For the reasons that follow, the Court **AFFIRMS** the decision of the Commissioner and **DISMISSES** this matter.


## ADMINISTRATIVE HISTORY

      Plaintiff filed an application for DIB on September 26, 2017, alleging a disability onset date of September 8, 2013. Tr. 197-98.[1]  The application was denied initially and on reconsideration.  An Administrative Law Judge (ALJ) held a hearing on September 24, 2019.  Tr. 29-58.  Plaintiff was

---

[1] Citations to the official transcript of record filed by the Commissioner on September 24, 2021, are referred to as "Tr."

2 - OPINION AND ORDER

represented at the hearing.  Plaintiff and a vocational expert
(VE) testified.

The ALJ issued a decision on November 22, 2019, in which he
found Plaintiff was not disabled during the relevant period and,
therefore, was not entitled to benefits.  Tr. 11-28.  Pursuant to
20 C.F.R. § 404.984(d), that decision became the final decision
of the Commissioner on August 21, 2020, when the Appeals Council
denied Plaintiff's request for review.  Tr. 1-5.  *See Sims v.
Apfel*, 530 U.S. 103, 106-07 (2000).

## BACKGROUND

Plaintiff was born on February 13, 1963, and was 56 years
old at the time of the hearing.  Tr. 197.  Plaintiff has an
eleventh-grade education.  Tr. 33.  Plaintiff has past relevant
work experience as a laborer and as a combination medical
assistant and receptionist.  Tr. 19.

Plaintiff alleges disability during the relevant period due
to "hernia mesh surgery," "blood clots in kidneys/pain," "pain
under left breast," Crohn's disease, neuropathy in lower and
upper extremities, "multiple abdominal surgeries," valvectomy,
"unsuccessful surgery," "lichen sclerosus," and high cholesterol.
Tr. 61.

Except when noted, Plaintiff does not challenge the ALJ's
summary of the medical evidence.  After carefully reviewing the

medical records, this Court adopts the ALJ's summary of the
medical evidence.

## STANDARDS

The initial burden of proof rests on the claimant to
establish disability.  *Molina v. Astrue*, 674 F.3d 1104, 1110 (9th
Cir. 2012).  To meet this burden a claimant must demonstrate the
inability "to engage in any substantial gainful activity by
reason of any medically determinable physical or mental
impairment which . . . has lasted or can be expected to last for
a continuous period of not less than 12 months."  42 U.S.C.
§ 423(d)(1)(A).  The ALJ must develop the record when there is
ambiguous evidence or when the record is inadequate to allow for
proper evaluation of the evidence.  *McLeod v. Astrue*, 640 F.3d
881, 885 (9th Cir. 2011)(quoting *Mayes v. Massanari,* 276 F.3d
453, 459-60 (9th Cir. 2001)).

The district court must affirm the Commissioner's decision
if it is based on proper legal standards and the findings are
supported by substantial evidence in the record as a whole.  42
U.S.C. § 405(g).  *See also Brewes v. Comm'r of Soc. Sec. Admin.*,
682 F.3d 1157, 1161 (9th Cir. 2012).  Substantial evidence is
"relevant evidence that a reasonable mind might accept as
adequate to support a conclusion."  *Molina*, 674 F.3d. at 1110-11
(quoting *Valentine v. Comm'r Soc. Sec. Admin.*, 574 F.3d 685, 690

(9th Cir. 2009)).  "It is more than a mere scintilla [of evidence] but less than a preponderance."  *Id.* (citing *Valentine*, 574 F.3d at 690).

The ALJ is responsible for determining credibility, resolving conflicts in the medical evidence, and resolving ambiguities.  *Vasquez v. Astrue*, 572 F.3d 586, 591 (9th Cir. 2009).  The court must weigh all of the evidence whether it supports or detracts from the Commissioner's decision.  *Ryan v. Comm'r of Soc. Sec.*, 528 F.3d 1194, 1198 (9th Cir. 2008).  Even when the evidence is susceptible to more than one rational interpretation, the court must uphold the Commissioner's findings if they are supported by inferences reasonably drawn from the record.  *Ludwig v. Astrue*, 681 F.3d 1047, 1051 (9th Cir. 2012).  The court may not substitute its judgment for that of the Commissioner.  *Widmark v. Barnhart*, 454 F.3d 1063, 1070 (9th Cir. 2006).

## DISABILITY ANALYSIS

### I.   The Regulatory Sequential Evaluation

The Commissioner has developed a five-step sequential inquiry to determine whether a claimant is disabled within the meaning of the Act.  *Parra v. Astrue*, 481 F.3d 742, 746 (9th Cir. 2007).  *See also* 20 C.F.R. § 404.1520.  Each step is potentially dispositive.

At Step One the claimant is not disabled if the Commissioner determines the claimant is engaged in substantial gainful activity.  20 C.F.R. § 404.1520(a)(4)(I).  *See also Keyser v. Comm'r of Soc. Sec.*, 648 F.3d 721, 724 (9th Cir. 2011).

At Step Two the claimant is not disabled if the Commissioner determines the claimant does not have any medically severe impairment or combination of impairments.  20 C.F.R. §§ 404.1509, 404.1520(a)(4)(ii).  *See also Keyser*, 648 F.3d at 724.

At Step Three the claimant is disabled if the Commissioner determines the claimant's impairments meet or equal one of the listed impairments that the Commissioner acknowledges are so severe as to preclude substantial gainful activity.  20 C.F.R. § 404.1520(a)(4)(iii).  *See also Keyser*, 648 F.3d at 724.  The criteria for the listed impairments, known as Listings, are enumerated in 20 C.F.R. part 404, subpart P, appendix 1 (Listed Impairments).

If the Commissioner proceeds beyond Step Three, she must assess the claimant's residual functional capacity (RFC).  The claimant's RFC is an assessment of the sustained, work-related physical and mental activities the claimant can still do on a regular and continuing basis despite her limitations.  20 C.F.R. § 404.1520(e).  *See also* Social Security Ruling (SSR) 96-8p.  "A 'regular and continuing basis' means 8 hours a day, for 5 days a week, or an equivalent schedule."  SSR 96-8p, at *1.  In other

6 - OPINION AND ORDER

words, the Social Security Act does not require complete incapacity to be disabled. *Taylor v. Comm'r of Soc. Sec. Admin.*, 659 F.3d 1228, 1234-35 (9th Cir. 2011)(citing *Fair v. Bowen*, 885 F.2d 597, 603 (9th Cir. 1989)).

At Step Four the claimant is not disabled if the Commissioner determines the claimant retains the RFC to perform work the claimant has done in the past. 20 C.F.R. § 404.1520(a)(4)(iv). *See also Keyser*, 648 F.3d at 724.

If the Commissioner reaches Step Five, she must determine whether the claimant is able to do any other work that exists in the national economy. 20 C.F.R. § 404.1520(a)(4)(v). *See also Keyser*, 648 F.3d at 724-25. Here the burden shifts to the Commissioner to show a significant number of jobs exist in the national economy that the claimant can perform. *Lockwood v. Comm'r Soc. Sec. Admin.*, 616 F.3d 1068, 1071 (9th Cir. 2010). The Commissioner may satisfy this burden through the testimony of a VE or by reference to the Medical-Vocational Guidelines set forth in the regulations at 20 C.F.R. part 404, subpart P, appendix 2. If the Commissioner meets this burden, the claimant is not disabled. 20 C.F.R. § 404.1520(g)(1).

## **ALJ'S FINDINGS**

At Step One the ALJ found Plaintiff did not engage in substantial gainful activity from her September 8, 2013, alleged

7 - OPINION AND ORDER

onset date through her December 31, 2017, date last insured.
Tr. 13.

At Step Two the ALJ found Plaintiff had the severe
impairments during the relevant period of "hernias status post
surgical repair; dysfunction of joints; disorders of muscle,
ligament, and fascia; degenerative disc disease and scoliosis of
the spine; and peripheral neuropathy." Tr. 14.  The ALJ found
Plaintiff's impairments of "history of renal infarct [*sic*],
history of parotitis, and history of Crohn's disease,"
depression, and anxiety were not severe during the relevant
period.  Tr. 14.  The ALJ found Plaintiff's alleged Sjogren's
syndrome and lupus were not medically determinable impairments
during the relevant period.  *Id.*

At Step Three the ALJ concluded Plaintiff's medically
determinable impairments during the relevant period did not meet
or medically equal one of the listed impairments in 20 C.F.R.
part 404, subpart P, appendix 1.  Tr. 16.  The ALJ found
Plaintiff had the RFC during the relevant period to perform light
work with the following limitations:

> [Plaintiff] could never climb ladders, ropes, or
> scaffolds, and the claimant could never crawl.
> [Plaintiff] could frequently balance and
> occasionally stoop, crouch, kneel, and climb ramps
> and stairs.  [Plaintiff] could have no exposure
> whatsoever to vibration or to hazards such as
> dangerous machinery and unprotected heights.

Tr. 16.

8 - OPINION AND ORDER

At Step Four the ALJ found Plaintiff could perform her past work as a combination medical assistant and receptionist during the relevant period.  Tr. 19.  Accordingly, the ALJ concluded Plaintiff was not disabled from her September 8, 2013, alleged onset date through her December 31, 2017, date last insured. Tr. 27.

## DISCUSSION

Plaintiff contends the ALJ erred when he (1) partially rejected Plaintiff's testimony; (2) failed to address the lay-witness statement of Plaintiff's son, Kyle S.; (3) partially rejected the opinion of Samuel Leung, D.O., treating physician; and (4) failed to include all of Plaintiff's limitations in his hypothetical to the VE.

### I.   Plaintiff's Testimony

Plaintiff alleges the ALJ erred when he partially rejected Plaintiff's testimony.

The ALJ engages in a two-step analysis to determine whether a claimant's testimony regarding subjective pain or symptoms is credible.

"First, the ALJ must determine whether the claimant has presented objective medical evidence of an underlying impairment 'which could reasonably be expected to produce the pain or other symptoms alleged.'"  *Garrison v. Colvin*, 759 F.3d 995, 1014 (9th

Cir. 2014)(quoting *Lingenfelter v. Astrue*, 504 F.3d 1028, 1035-36 (9th Cir. 2007)).  The claimant need not show her "impairment could reasonably be expected to cause the severity of the symptom she has alleged; she need only show that it could reasonably have caused some degree of the symptom." *Garrison*, 759 F.3d at 1014 (quoting *Smolen v. Chater*, 80 F.3d 1273, 1282 (9th Cir. 1996)). A claimant is not required to produce "objective medical evidence of the pain or fatigue itself, or the severity thereof." *Garrison*, 759 F.3d at 1014.

If the claimant satisfies the first step of this analysis and there is not any affirmative evidence of malingering, "the ALJ can reject the claimant's testimony about the severity of her symptoms only by offering specific, clear and convincing reasons for doing so." *Garrison*, 759 F.3d at 1014-15. *See also Robbins v. Soc. Sec. Admin.*, 466 F.3d 880, 883 (9th Cir. 2006)(same). General assertions that the claimant's testimony is not credible are insufficient. *Parra v. Astrue*, 481 F.3d 742, 750 (9th Cir. 2007).  The ALJ must identify "what testimony is not credible and what evidence undermines the claimant's complaints." *Id*. (quoting *Lester v. Chater*, 81 F.3d 821, 834 (9th Cir. 1995)).

Plaintiff testified at the hearing that during the relevant period she "could not get up [her] own stairs [or] . . . go outside into the garden without being completely winded." Tr. 44.  She was unable to climb stairs during the relevant

10 - OPINION AND ORDER

period because she would "run out of breath" and her legs would
"start . . . [to] feel like they're filled with lead.  And then
they start[ed] hurting."  *Id*.  Plaintiff stated during the
relevant period she "was starting to get numbness in [her] feet
[and] arms."  Tr. 45.  Plaintiff testified during the relevant
period she "was starting to get the weird neuropathies on and
off.  [She] was starting to get more signs of the Reynaud's in
[her] feet[,] hands[, and] knees.  [She] was getting a lot of
joint issues, . . . tendinitis in [her] elbow; just general not
feeling well; [and] fatigue."  Tr. 46.  Plaintiff stated toward
the end of the relevant period she was unable to work in her
garden, to walk her dog, to wash the car, to bend down, or to
"bend over where it folds [her] stomach."  Tr. 47.  Plaintiff
testified during the relevant period she had to "lean over with
[her] arms propped on the sink to . . . do the dishes.  It hurt[]
[her] upper back [and] right flank tremendously" and she did not
have any strength in her hands.  Tr. 47.

The ALJ found Plaintiff's "medically determinable
impairments could reasonably be expected to cause the alleged
symptoms" during the relevant period, but Plaintiff's "statements
concerning the intensity, persistence and limiting effects of
[her] symptoms are not entirely consistent with the medical
evidence and other evidence in the record."  Tr. 17.
Specifically, the ALJ noted although Plaintiff testified during

the relevant period she was unable to climb stairs because she
would "run out of breath" and her legs would "start . . . [to]
feel like they're filled with lead.  And then they start[ed]
hurting," the record reflects Plaintiff had normal gait and
posture, "normal muscle tone and strength" and 5/5 strength in
upper and lower extremities.  *See, e.g.,* Tr. 577, 594-95, 661.
In addition, in May 2016 Plaintiff reported having intermittent
right flank pain "after [she] overdid activity cleaning house and
in [the] yard."  Tr. 770.  Plaintiff reported her pain was
"better with heat and massage."  Tr. 770.  In September 2016
Plaintiff reported she was "able to walk for 1.5 mile[s] before
she ha[d] to stop and rest."  Tr. 591.

        The ALJ also noted imaging and objective testing conducted
during the relevant period did not support the severity of
Plaintiff's alleged impairments.  For example, an October 2016
MRI of Plaintiff's lumbar spine reflected "mild dextrocurvature
of the lumbar spine without degenerative disc disease or
intrinsic bony abnormality.  Exam negative for acute disc
herniation or spinal stenosis.  No evidence of foraminal
stenosis."  Tr. 603.  Sarah Crawford, NP-C, stated after
reviewing Plaintiff's October 2016 MRI that "[i]t is unclear
. . . why [Plaintiff] is having right radicular leg pain in L5
distribution . . . I am unable to correlate this with her MRI
findings.  I do not recommend lumbar spine surgery . . . and feel

12 - OPINION AND ORDER

that symptoms would be better managed with conservative
measures." *Id*. A March 2016 x-ray of Plaintiff's thoracic spine
was "unremarkable" and "show[ed] only mild degenerative change."
Tr. 721. A December 2016 MRI of Plaintiff's thoracic spine
reflected

> mild degenerative disc disease in the mid and
> lower thoracic spine with small disc bulge at
> T7-TB without significant narrowing of the spinal
> canal. Remainder of the thoracic spine has a
> normal . . . appearance. There is no significant
> narrowing of the spinal canal or neural foramina
> throughout the thoracic spine, and no abnormality
> of the thoracic spinal cord.

Tr. 604. In January 2017 a CT scan was negative for parotid
swelling. Tr. 629. In February 2017 Jack Lewis, M.D., treating
urologist, noted there "is nothing to be done regarding
[Plaintiff's] history of renal complications. She has already
had [a] thorough workup without an obvious cause identified."
Tr. 662. In October 2017 Samuel Leung, D.O., noted Plaintiff
"complains of chronic fatigue," but "multiple laboratory testing
[*sic*] for rheumatologic etiologies failed to reveal a source."
Tr. 932. On October 5, 2017, Dr. Leung noted Plaintiff
complained of "chronic disabling fatigue that started several
years ago[, however,] this was not discussed . . . until
[Plaintiff's] . . . appointment on October 2, 2017." Tr. 942.
Dr. Leung declined to complete a social security disability form
for Plaintiff noting "none of [Plaintiff's] diagnosis qualify for
long-term disability." *Id*. Dr. Leung also noted he contacted

13 - OPINION AND ORDER

Mandip Atwal, D.O., for a consultation during Plaintiff's
October 5, 2017, office visit and Dr. Atwal advised [Plaintiff's]
"hernia mesh should not be causing debilitating pain as patient
described" and did not recommend any further intervention.  *Id*.
Finally, cardiac testing was consistently negative for issues.

The Court concludes on this record that the ALJ did not err
when he partially rejected Plaintiff's testimony regarding the
intensity, persistence, and limiting effects of her symptoms
because the ALJ provided clear and convincing reasons supported
by substantial evidence in the record for doing so.

**II. Lay-Witness Statement**

Plaintiff alleges the ALJ erred when he failed to address
the Third-Party Function Report of Plaintiff's son, Kyle S.

Lay-witness testimony regarding a claimant's symptoms is
competent evidence that the ALJ must consider unless he
"expressly determines to disregard such testimony and gives
reasons germane to each witness for doing so."  *Lewis v. Apfel*,
236 F.3d 503, 511 (9th Cir. 2001).  *See also Merrill ex rel.
Merrill v. Apfel*, 224 F.3d 1083, 1085 (9th Cir. 2000)("[A]n ALJ,
in determining a claimant's disability, must give full
consideration to the testimony of friends and family members.").
The ALJ's reasons for rejecting lay-witness testimony must also
be "specific."  *Stout v. Comm'r*, 454 F.3d 1050, 1054 (9th Cir.
2006).

14 - OPINION AND ORDER

On October 8, 2017, Kyle S. completed a Third-Party Function Report in which he stated Plaintiff suffered symptoms and limitations similar to those set out by Plaintiff in her testimony.  Specifically, he stated "even small activities are difficult [for Plaintiff] due to an inability to maintain any sort of strength and stamina."  Tr. 271.  Plaintiff struggled to go up stairs, could do any household chores, and was not able to bend over or to reach high cupboards.  *Id*.  Kyle S. stated Plaintiff was not able to lift, to move, or to clean without "significant energy loss"; she did not go places alone, and she shopped "very little."  Tr. 273-74.

The ALJ failed to discuss Kyle S.'s Third-Party Function Report.  Kyle S.'s report, however, is substantially similar to Plaintiff's testimony, and the Court has already concluded the ALJ did not err when he partially rejected Plaintiff's testimony because the ALJ provided support for his opinion based on substantial evidence in the record.  The Court, therefore, concludes to the extent the ALJ erred when he failed to address Kyle S.'s statement, the error was harmless because "no reasonable ALJ, when fully crediting the testimony, could have reached a different disability determination."  *Stout*, 454 F.3d at 1056.

## III. Medical Opinion

Plaintiff alleges the ALJ erred when he found the opinion of

Dr. Leung to be unpersuasive.

"Because plaintiff filed [his] application[] after March 27, 2017, new regulations apply to the ALJ's evaluation of medical opinion evidence." *Christopher W. v. Comm'r*, No. 6:20-CV-01632-JR, 2021 WL 4635801, at *6 (D. Or. Oct. 7, 2021). "Under the [new] regulations, an ALJ 'will not defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s) or prior administrative medical finding(s)[.]'" *Id*. (quoting 20 C.F.R. §§ 404.1520c(a), 416.920c(a)). "A prior administrative medical finding is a finding, other than the ultimate determination about [disability], about a medical issue made by . . . agency medical and psychological consultants at a prior level of review . . . in [a] claim based on their review of the evidence." 20 C.F.R. § 404.1513(a)(5). In addition, the new regulations rescinded SSR 06-03p in which the SSA "explained how [it] considers opinions and other evidence from sources who are not acceptable medical sources . . . . The [new] rules revised [this] polic[y]. . . . For example, in claims filed on or after March 27, 2017, the final rules state that all medical sources, not just acceptable medical sources, can make evidence that [it] categorize[s] and consider[s] as medical opinions." Rescission of Soc. Sec. Rulings 96-2p, 96-5p, & 06-3p, SSR 96-2P 2017 WL 3928298, at *1 (S.S.A. Mar. 27, 2017).

"The ALJ must articulate and explain the persuasiveness of a
[medical] opinion or prior finding based on 'supportability' and
'consistency,' the two most important factors in the evaluation.
*Christopher W.*, 2021 WL 4635801, at *6 (quoting 20 C.F.R.
§§ 404.1520c(a), (b)(1)-(2)).  "The 'more relevant the objective
medical evidence and supporting explanations presented' and the
'more consistent' with evidence from other sources, the more
persuasive a medical opinion or prior finding."  *Id.* (quoting 20
C.F.R. § 404.1520c(c)(1)-(2)).

> The ALJ may, however, is not required, to explain
> how other factors were considered including the
> relationship with the claimant (length, purpose,
> and extent of treatment relationship; frequency of
> examination); whether there is an examining
> relationship; specialization; and other factors,
> such as familiarity with other evidence in the
> claim file or understanding of the Social Security
> disability program's policies and evidentiary
> requirements.

*Id.* (quoting 20 C.F.R. §§ 404.1520c(b)(2), (c)(3)-(5)).  *But see*
20 C.F.R. § 404.1520c(b)(3)(when an ALJ finds two or more
opinions about the same issue are equally supported and
consistent with the record but not exactly the same, the ALJ must
articulate how these "other factors" were considered).

On March 27, 2018, Dr. Leung completed a Medical Source
Statement in which he listed Plaintiff's diagnoses from April 23,
2016, through March 27, 2018, as "renal infarct [*sic*], chronic
sinusitis, [illegible], flank pain, abdominal pain, vaginal pain,
bulging disc of T7-T8, scoliosis, back pain/neck pain, [and]

17 - OPINION AND ORDER

shoulder pain." Tr. 1011. Dr. Leung identified the following
clinical findings and objective signs: "CT scan of head -
chronic inflammation of maxillary sinus bilaterally. . . . MRI
of thoracic spine - mild degenerative disc disease in the mid and
lower thoracic spine with a small disc bulge at T7-T8 without
significant narrowing of the spinal canal." Tr. 1011. Dr. Leung
opined Plaintiff could stand or walk for two hours in an eight-
hour work day; sit for two hours in an eight-hour work day;
occasionally lift less than ten pounds, crouch, and squat; rarely
lift ten pounds, twist, or climb stairs; and never lift more than
ten pounds, stoop, or climb ladders. Tr. 1012. Dr. Leung stated
during the relevant period Plaintiff's "experience of pain or
other symptoms [were frequently] severe enough to interfere with
attention and concentration needed to perform even simple work
tasks." Tr. 1013. Finally, Dr. Leung noted during the relevant
period Plaintiff was able to tolerate "moderate work stress," but
he would expect her to be absent from work two days per month "as
a result of [her] impairments or treatment." *Id.*

The ALJ found Dr. Leung's opinion to be unpersuasive.
Specifically the ALJ noted Dr. Leung's treatment notes during the
relevant period reflect Plaintiff had normal motor strength,
normal gait, and normal range of motion. *See, e.g.,* Tr. 577,
594-95, 661. In addition, as noted, imaging and objective testing
conducted during the relevant period did not support the severity

18 - OPINION AND ORDER

of Plaintiff's alleged impairments.  For example, an October 2016
MRI of Plaintiff's lumbar spine reflected "mild dextrocurvature
the lumbar spine without degenerative disc disease or intrinsic
bony abnormality.  Exam negative for acute disc herniation or
spinal stenosis.  No evidence of foraminal stenosis."  Tr. 603.
A March 2016 x-ray of Plaintiff's thoracic spine was
"unremarkable" and "show[ed] only mild degenerative change."
Tr. 721.  A December 2016 MRI of Plaintiff's thoracic spine
reflected "mild degenerative disc disease in the mid and lower
thoracic spine with small disc bulge at T7-TB without significant
narrowing of the spinal canal.  Remainder of the thoracic spine
has a normal . . . appearance.  There is no significant narrowing
of the spinal canal or neural foramina throughout the thoracic
spine, and no abnormality of the thoracic spinal cord."  Tr. 604.
In February 2017 Plaintiff's treating urologist, noted there "is
nothing to be done regarding [Plaintiff's] history of renal
complications.  She has already had [a] thorough workup without
an obvious cause identified."  Tr. 662.  In October 2017
Dr. Leung noted Plaintiff "complains of chronic fatigue," but
"multiple laboratory testing for rheumatologic etiologies failed
to reveal a source."  Tr. 932.  Finally, as noted, in October
2017 Dr. Leung declined to complete a social security disability
form for Plaintiff noting "none of [Plaintiff's] diagnosis
qualify for long-term disability."  Tr. 942.

On this record the Court concludes the ALJ did not err when he found Dr. Leung's opinion to be unpersuasive because the ALJ provided clear and convincing reasons for doing so based on substantial evidence in the record.

## IV.  Hypothetical to the VE

Plaintiff asserts the ALJ erred when he failed to include all of Plaintiff's limitations in his hypothetical to the VE. Specifically, Plaintiff alleges the ALJ failed to include limitations identified by Plaintiff and Kyle S. in their statements and by Dr. Leung in his opinion.

The Court has already concluded the ALJ did not err when he rejected portions of limitations asserted by Plaintiff, Kyle S. and Dr. Leung.  On this record, therefore, the Court also concludes ALJ did not err when he did not include those limitations in his hypothetical to the VE.

## CONCLUSION

For these reasons, the Court **AFFIRMS** the decision of the Commissioner and **DISMISSES** this matter.

IT IS SO ORDERED.

DATED this 24th day of August, 2022.

/s/ Anna J. Brown
_____
ANNA J. BROWN
United States Senior District Judge

20 - OPINION AND ORDER